# Richmond.

## RICHMOND TRACTION COMPANY v. WILLIAMS.

### JANUARY 14, 1904.

### Absent, Buchanan, J.*

1. STREET RAILWAYS—*Duty to Passengers—Stopping Points—Sudden Starting.*—It is the duty of a street railway company to use the utmost care and diligence for the safety of its passengers, and if, in pursuance of a city ordinance and the rules of the company, a car stops just before reaching a grade crossing with a steam railroad, and the company knows that passengers are in the habit of alighting at such point, it is the duty of the company to use due and proper care to see that no one is alighting at that point before again setting its car in motion.

2. STREET RAILWAYS—*Alighting—Negligence.*—It is contributory negligence to attempt to alight from a street-car while it is in motion; but where one has retained his seat until the car has stopped and then goes forward, and, while in the act of alighting, is thrown to the ground by the sudden starting of the car, he is not chargeable with contributory negligence.

3. INSTRUCTIONS—*Abstract Propositions of Law.*—An instruction containing a mere abstract proposition of law is calculated to mislead the jury and should not be given.

4. INSTRUCTIONS—*Fully Instructed.*—It is not error to refuse instructions when the propositions of law embodied therein, though correct, are sufficiently covered by other instructions which have been given.

5. STREET RAILWAYS—*Negligence—Fact for Jury—Verdicts.*—Whether the employees of a street railway company have been negligent in the discharge of their duties toward a passenger, or the latter has been guilty of contributory negligence, are questions for the jury under proper instructions from the court, and their verdict will not be disturbed when this court cannot say that it is without evidence to support it or is against the evidence.

*Judge Buchanan was detained at home by sickness.

Error to a judgment of the Law and Equity Court of the city of Richmond, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*William L. Royall,* for the plaintiff in error.

*Edgar Allan* and *Edgar Allan, Jr.,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The defendant in error, Mrs. S. M. Williams, brought her action in the Law and Equity Court of Richmond city, and recovered judgment against the plaintiff in error, the Richmond Traction Company, for the sum of five hundred dollars, with interest from the 24th day of April, 1901, as damages for injuries sustained because of the negligence of the defendant, and we are asked to reverse this judgment on the grounds, (1) That the court below misdirected the jury as to the law, and (2) because the verdict is contrary to the law and the evidence. The defendant below, plaintiff in error here, owns and operates an electric street railway in the city of Richmond, and one of its tracks lies in Cary street, running east and west, and it crosses at right angles Belvidere street, on which the Richmond, Fredericksburg and Potomac steam railroad has a track, upon which steam cars are operated.

An ordinance of the city of Richmond, relative to the conduct of street railways operated within the city, contains the provision that "at every point of intersection of either street-car line with a steam railroad, the street-car company's cars shall come to a full stop before crossing the tracks of the steam road, and the steam road in each case shall have the right of way,"

etc., and one of the printed rules of the plaintiff in error reads as follows:    "16. Steam Railroad Crossings.—Motormen must bring their cars to a full stop, not nearer than twenty-five feet to the nearest track—meaning, the nearest track of the steam railroad.    The motorman must not proceed with his car until the conductor has gone ahead on to the steam railroad track, and looked both ways, and given a signal to start.    The motorman will also observe the utmost watchfulness for approaching trains, and should, in his judgment, danger be imminent from any source he will refuse to start his car until the crossing is clear and free from all danger.    When the conductor has gone ahead of car, before starting, the motorman will look back and see that there is no one getting on or off the car." . . . Another of the plaintiff in error's rules provides:    "39. Approaching street and railway crossings.—Approach all street and railway crossings with care, and your car under perfect control; cross the street before stopping."

On the 24th day of April, 1901, the defendant in error was a passenger on one of the cars of the plaintiff in error, having gotten on the car at First and Broad streets, and was going to her home on Belvidere street, near Cary street.    When the car reached the east side of Belvidere street, it came to a full stop, in accordance with the rules of the plaintiff in error, and the conductor went forward to view the steam railroad tracks, to ascertain whether his car could proceed further without danger of collision with the steam cars, and, observing the approach of no steam cars, he signaled the motorman to go forward.    In the meantime the defendant in error had left her seat in the car, and was in the act of alighting upon the street when the car was suddenly started with a severe jerk, throwing her upon the street, causing her the injuries for which this suit was brought.    Her contention at the trial was that by custom the place at which she attempted to leave the car had become a regular stopping place for passengers to alight, and that before ap-

proaching that point she signaled to the conductor with her hand
to stop the car for her to alight, and she supposed he understood
and agreed to her signal, whereupon she got up and walked out
upon the back platform, supposing that the conductor would be
there to assist her off, but when she got upon the rear platform
she found that the conductor had gone to the steam road, and,
reaching it and without looking back, he signaled the motorman
with his hand to come on, and, the motorman applying the elec-
tricity, the car gave a sudden jerk that threw her to the ground
and injured her.

On the other hand, the theory of plaintiff in error was, that
the defendant in error either attempted to get off the car while
moving, thereby contributing to her own injuries, or that after
reaching the rear platform at the steps, instead of getting off
the car, she delayed, and thereby lost her opportunity to get off
before the car started.  In other words, the contention of the de-
fendant in error was that she received her injuries by reason of
the neglect of the plaintiff in error to perform its duty to her
under the law as a passenger, and in violation of its own rules
and regulations, while the theory of the plaintiff in error was
that the defendant in error, by her own negligence, contributed
to her injuries, whereby she was barred of any recovery in this
action.

The defendant in error at the trial asked for two instructions
which the court gave.  The second relates to the measure of dam-
ages in such an action, and is free from objection, and will there-
fore not be further noticed.  The first instruction is as follows:

"The court instructs the jury that it is the duty of common
carriers, such as street railway companies, to use extraordinary
care and caution to see that passengers are not injured in getting
on or off their cars, and that it was the duty of the defendant
company, their servants and employees, to take due and proper
precaution to see that no one was in the act of alighting before
moving their car ahead after the same had been stopped at a

regular point for stopping, and if the jury shall believe from the evidence that the plaintiff, Mrs. Williams, without negligence on her part, was in the act of alighting from said car, and that the defendant company, their servants or employees, failed to perform their duty in this behalf, and by reason thereof the plaintiff was injured, then the jury shall find for the plaintiff."

This instruction, we think, was clearly right, as it presented the rule of law which this court has frequently laid down with reference to the liability of a street-car company to use the utmost care and diligence for the safety of passengers. The most recent case on the subject is that of *N. & A. Ter. Co.* v. *Morris's Adm'x,* 101 Va. 422, 44 S. E. 719. The evidence tended to show that the defendant in error in this case was seeking to leave the car at a point which, by custom, known to the plaintiff in error, had become a regular stopping place where passengers left the car, and she was, on this occasion, as she had frequently done before, alighting from the car near her home.

Plaintiff in error asked for five instructions, marked A, B, C, D and E, of which the court refused to give D and E, and modified A, B and C; the court giving the instructions as modified as its own instructions, numbering them Nos. 3, 4 and 5. Instrction A modified was as follows:

"If the jury believe from the evidence that the plaintiff undertook to get off of defendant's car while it was in motion, she is guilty of contributory negligence and cannot recover in this action."

And in lieu of this instruction, the court gave the following:

"If the jury believe from the evidence that the plaintiff undertook to get off the defendant's car while it was in motion, she is guilty of contributory negligence and cannot recover in this action; but if the jury believe from the evidence that the plain-

tiff retained her seat until the car had fully stopped, and reached the platform before the car was started forward, and that then, while she was in the act of alighting, by the sudden starting of the car, she was thrown to the ground and injured, her conduct cannot be considered as constituting contributory negligence on her part."

If it be conceded that a passenger on a street-car is guilty of negligence by leaving his seat while the car is in motion, as to which we express no opinion, instruction A contained a mere abstract proposition of law which was calculated to mislead the jury in this case, and the court was clearly right in qualifying it by adding thereto, "but if the jury believe from the evidence that the plaintiff retained her seat until the car had fully stopped and reached the platform before the car was started forward, and that, then, while she was in the act of alighting, by the sudden starting of the car, she was thrown to the ground and injured, her conduct cannot be considered as constituting contributory negligence on her part." We are further of opinion that this instruction, as given by the court, together with its fourth and fifth instructions, sufficiently covered every proposition of law contended for in the instructions asked for by the defendant in error, which were refused. The instructions as given submitted more clearly to the jury the issues presented by the testimony in the case, and it is not error to refuse instructions when the propositions of law, although correctly stated therein, are sufficiently covered. by other instructions, which are granted. *N. & W. Ry. Co.* v. *Tanner,* 100 Va. 379, 41 S. 721.

We shall not attempt to review in detail the evidence in the case. This is a very different case from that of a trespasser, a licensee, or of a person crossing a street, with rights only equal to those of a railroad company. Here it was a passenger towards whom the railroad owed the highest diligence. While the defendant in error may have known that the regular stopping point at which to take on or put off passengers was on the oppo-

site side of Belvidere street, the evidence was ample to show that by custom, well-known to plaintiff in error, its cars had been stopping on the east side of Belvidere street, at which point passengers constantly got off. The jury, therefore, was well warranted in finding that the defendant in error was not guilty of negligence merely by the fact that she attempted to leave the car at that point, after it had come to a full stop. It was the duty of the employees of the company to be on the alert to see that passengers seeking to alight from the car at that point were not put in peril by doing so, when by the exercise of ordinary care on the part of these employees danger to them might be averted. Whether these employees were negligent in the performance of these duties, as well as the question, whether or not the defendant in error was guilty of negligence contributing with that of the plaintiff in error and causing her injury was a question of fact for the jury, and these questions having been submitted fairly to them by the instructions given by the court, we cannot say that the verdict of the jury is without evidence or against the evidence.

Upon the whole case, we are of opinion that the judgment should be affirmed.

*Affirmed.*