# Richmond

## O. R. PRICE v. C. W. FRANCIS, JR., ETC.

November 19, 1945.

Record No. 2965.

Present, Campbell, C. J., and Gregory, Browning, Eggleston and
Spratley, JJ.

The opinion states the case.

*T. W. Messick*, for the plaintiff in error.

*Cocke, Hazelgrove & Shackelford*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

C. W. Francis, Jr., trading as C. W. Francis and Son, brought an action at law by notice of motion against O. R. Price and Mabel Price, his wife, to recover commissions alleged to be due from them on account of services rendered them as a real estate agent.

There was a trial by a jury which resulted in a verdict in favor of Mabel Price and against O. R. Price, in the amount of $860, the amount claimed as commissions due. Judgment was entered for the amount found by the jury to be due from O. R. Price.

Francis is a duly licensed real estate agent doing business in the city of Roanoke. O. R. Price and Mabel Price were the joint owners of a residence situate at 1100 Brightwood Place, in the city of Roanoke.

On March 22, 1944, Earl C. White, an agent of the plaintiff, called O. R. Price on the 'phone at his office and inquired if he wished to sell the residence property. Price replied that he would sell the property for the sum of $20,500. In response to this statement White called at the office and produced a written authorization for the sale of the property, which is as follows:

"March 22, 1944

"Mr. Earl C. White,
"c/o C. W. Francis & Son, Realtors
"Roanoke, Virginia.

"Dear Mr. White:
    "This is to authorize you to offer our home in Prospect Hills for sale for a period of nine days from this date for the sum of $20,500 out of which we agree to pay you a regular commission of 5% on the first $4,000 and 4% on the remainder.
    "This listing is good for a period of nine days only from this date.

    "Yours very truly,

        "Signed   O. R. Price.
            Signed. . . . . . . . . . . . . . . . . . . ."

    The case of the plaintiff, as shown by the record, is as follows:
    White, prior to the signing of the contract here in question, had been in contact with O. R. Price and Mabel Price, and O. R. Price had listed this property for a sale which was not consummated. On the same day the contract was signed by O. R. Price, Francis wrote to a Mr. Davis in regard to purchasing the Price property. On March 25th, Davis came to Roanoke, and, with Francis, went to see the property. Both O. R. Price and Mabel Price were at the residence upon the arrival of Francis and Davis. With Mrs. Price present, Price took the initiative in showing the house. However, Davis made no offer to purchase the property. Francis then contacted T. L. Leivesley, who formerly lived in Roanoke and was desirous of returning there to live. On March 27, 1944, Mr. and Mrs. Leivesley came from Richmond, Virginia, where they were then residing, to Roanoke to inspect the Price property. The Leivesleys were taken by White to the Price home about

7:30 p. m., and both Mr. and Mrs. Price were present at the home. Mrs. Price "very graciously showed the house." During this procedure no objection was made by Mrs. Price in regard to a sale of the property. On March 28, 1944, T. L. Leivesley signed and delivered to Francis a valid contract to purchase the Price property on the terms stipulated therein, which were in accordance with the terms of the listing contract. That Leivesley was a purchaser ready, willing and able to perform the contract is beyond dispute. Neither Price nor Mrs. Price executed the Leivesley contract, but returned same to Francis on April 5, 1944, without comment.

The only conflict in the evidence is in regard to what took place when Price delivered the listing contract to White. Price testified that White agreed to procure the signature of Mrs. Price to the listing contract. White testified that there was no such condition attached to the delivery of the contract.

Whatever conflict existed has been resolved by the verdict of the jury in favor of the plaintiff. This finding upon such an issue was conclusive upon the trial court and is also conclusive upon the appellate court. *Tucker Sanatorium* v. *Cohen*, 129 Va. 576, 587, 106 S. E. 355, 22 A. L. R. 315.

The refusal of the court to grant the motion of Price to set aside the verdict of the jury on the ground that it is contrary to the law and the evidence is assigned as error.

The basic contention of Price is that the listing contract was delivered to White, the agent, conditionally, the condition being that Mrs. Price was to sign the contract, and since she did not sign same, the claim of Francis is unavailing. On the other hand, Francis contends that no condition was imposed in regard to the execution of the contract. He further contends that the agreement of Price to pay commissions was one for the rendering of personal service upon the part of Francis, and in no way depended upon the ownership of the property involved.

Since the jury have settled the conflict in regard to

whether or not there was a conditional delivery of the contract, we are only concerned with a solution of the terms thereof.

It is to be observed that the contract is silent as to the ownership of the property. The fact that the property was jointly owned by the Prices does not change the legal aspect of the case. In other words, if the contention of Francis, that the contract was based upon the rendition of personal services, is sound, then Price would be liable for commissions, regardless of his interest in the property.

The applicable rule is well stated in *Feldman* v. *Goldman* (Mo. App. 1942), 164 S. W. (2d) 634, 639, as follows:

"One who employs a broker to find a purchaser is usually liable for compensation, regardless of the nature of his interest in the property and regardless of whether or not he has any interest in it whatsoever." (Citing cases.)

In our opinion, the contention of Francis is well founded. Taking the contract by its "four corners," it is based upon two conditions, namely, the obligation of Francis to find a duly qualified purchaser for the property; and, this having been done, the obligation of Price to pay the agreed commissions.

That this was the view of the trial court is evinced by its refusal to give certain instructions requested by defendants and, upon its own motion, giving this instruction:

"The Court instructs the jury as follows:

"The burden rests upon the plaintiff to prove his case by a preponderance of the evidence.

"Where an owner lists property with a real estate agent for sale and the agent, pursuant to such listing, procures a purchaser for the property ready, willing and able to buy upon the terms defined by the owner, then the agent is entitled to his commissions. The fact that the sale is not consummated does not deprive the agent of his right to receive commissions, unless the failure to consummate is due to the fault of the agent.

"If you believe from a preponderance of the evidence in this case that O. R. Price unconditionally listed with the

agent the property in question and that the agent, pursuant thereto, procured a purchaser ready, willing and able to buy, in accordance with the terms as stated in the letter of March 22, 1944, you should find your verdict for the plaintiff and against O. R. Price in the amount of $860.00. The fact that Mrs. Price may or may not have assented to or acquiesced in the offer to sell does not relieve O. R. Price of his liability to pay full commissions to the agent for the services rendered.

"If you believe that the property was listed with the agent upon the condition that the agent secure the consent of Mrs. Price to the proposed sale and that the agent failed to secure her consent, either expressly or by implication from all of the surrounding facts and circumstances, then you should find your verdict for the defendants. The burden, however, of proving that the listing was so conditioned is upon O. R. Price and he must carry this burden by a preponderance of the evidence in order to be entitled to a verdict in his favor.

"If you believe from a preponderance of the evidence that Mrs. Price knew that O. R. Price had listed the property with the agent and that so knowing she did verbally, or by any act or acts of her own, indicate her acquiescence in or agreement to such listing, then both Mabel R. Price and O. R. Price are liable and you should find your verdict for the plaintiff against both defendants.

"If you believe that Mrs. Price assented to the services of the agent by her conduct and by her acquiescence therein, such assent is just as binding on her as if she had signed the letter of March 22, 1944, or otherwise expressly assented to the proposed sale."

In the first place, this instruction deals with the debated question of the unconditional listing of the property by Price. As stated, this question has been resolved in favor of Francis. In the second place, the question of whether or not the consent of Mrs. Price was essential was submitted to the jury with the proviso that the burden was upon O. R.

Price to prove a conditional listing. This provision is objected to on the ground that the burden of proof in this regard was upon Francis. This objection is untenable, for the reason that the defense of conditional delivery was an affirmative defense and hence, the burden of proving it was upon Price. In the third place, the question of Mrs. Price's liability was properly submitted to the jury and resolved in her favor by the verdict returned.

As stated in the instruction, if the jury found, as they did find, that the listing was unconditional, the fact that Mrs. Price, a joint owner, did not acquiesce in the offer did not relieve O. R. Price of liability if the service rendered was personal. The further fact that the property was jointly owned is of no avail for the reason that the question of title is not necessarily involved in a claim for services rendered.

This was so held in *Anderson* v. *Lewis*, 64 W. Va. 297, 61 S. E. 160. In a syllabus by the court, this is said: "The owner of an undivided interest in a tract of land may bind himself personally to pay a commission on the sale of the whole thereof."

It is a matter of common knowledge that people do enter into contracts to sell property which they do not own.

Complaint is made of the refusal of the court to give the instructions requested by the defendants. This action of the court is without error. The instruction given fully covered the case.

In *Ney* v. *Wrenn*, 117 Va. 85, 84 S. E. 1, we held that where the jury have been fairly and fully instructed on every material point in a case, it is not error to refuse to give other instructions requested.

Defendant's main reliance is our decision in *Hansbrough* v. *Neal*, 94 Va. 722, 727, 27 S. E. 593. In that case it was held:

"One who negotiates a sale of land belonging to a husband and wife cannot recover of the husband compensation for selling the wife's interest in the land, unless the husband agreed to pay therefor."

Applied to the facts in that case, the rule of law is

correctly stated. However, when applied to the facts in the case at bar, the rule is not applicable. In the *Hansbrough Case*, this is said:

"There was no written contract between the parties, nor does the evidence show that there was any express agreement or understanding between them either as to the compensation to be paid, or the time of its payment."

Here we have a written contract and, in addition thereto, evidence that there was an agreement between O. R. Price and Francis as to the payment of commissions. The situation presented a jury question and by their verdict the jury have found that a definite agreement did exist and that Francis was entitled to full commissions for services rendered.

Upon the whole case, we are of opinion that the judgment of the trial court is without error and should be affirmed.

*Affirmed.*

GREGORY, J., dissenting.

I am unable to concur in the majority opinion. The very contract of listing between Price and Francis, upon which the latter brought this suit, shows upon its face beyond all doubt that it was not a completed contract. This incompleteness is bound to have been known to Francis. He prepared the contract and it discloses that it had to be executed by Mrs. Price. It states that you are authorized to sell "our" home, and "we" agree to pay you the commission; not that "I" agree to pay it. And, finally, provision is made for the signature of Mrs. Price. She never executed it.

Price has never agreed to pay commission on the sale of his wife's property. His agreement is expressed in the written contract. This is the agreement upon which the suit is brought, and in it Price does not agree to pay any commission on the sale of his wife's property.

The agent was not misled in any way. He knew that

Mrs. Price had to sign the contract to make it binding, for he has used expressions in the contract which conclusively show that it was essential that she sign it.

The jury, by its verdict in favor of Mrs. Price, in effect has said that she does not owe any part of the commission, that she was not bound by the contract, and that Price did not make the contract on her behalf. The verdict in her favor was not objected to by Francis, and it is conclusive here that no commissions were due by Mrs. Price on the sale of the property.

In the conclusion of the majority, this is said:

"Here we have a written contract, and in addition thereto, evidence that there was an agreement between O. R. Price and Francis as to the payment of commissions. This situation presented a jury question, and by their verdict the jury have found that a definite agreement did exist and that Francis was entitled to full commissions for services rendered".

As already indicated, this suit was instituted on the written contract and not on a verbal one. Francis was bound to have known of the interest of Mrs. Price for he provided for it in the written contract.

It may be conceded that a joint owner of real estate, under certain circumstances, may bind himself to pay the real estate commissions not only on his interest in the land but also upon the interest of the other joint owners. But this is not that case. In this case Price bound himself alone to pay the commissions on his one-half interest in the property. If Mrs. Price had signed the contract, as was contemplated, she would have been liable for commissions on her one-half interest. In that event, no one logically could have maintained that Price would have been bound for the commissions on her interest. The fact that she did not sign the contract could not increase the liability of Price. His liability was fixed by himself when he signed the writing.

Francis, having drawn the incompleted contract, knowing all of the material facts, and knowing that the commis-

sions, if paid, had to be paid by both Price and his wife, is now estopped to say that he had a verbal or implied agreement with Price alone whereby the latter agreed to pay the entire commission instead of one-half of it. Francis, having brought this suit on the written contract, must stand or fall on it alone. It binds Price but not his wife. The agent should not be allowed to shift his position from the written contract to some other verbal understanding which was never pleaded.

The verdict in favor of Mrs. Price concludes the question of any possible agency that might have existed between Price and his wife. The jury has found that no agency existed, and therefore Price was not authorized to list his wife's property for sale.

As I view it, Price, according to the written contract, never having agreed to pay the commissions on his wife's property, is only liable for commissions on his own. I think the verdict and judgment should be against Price for the usual commissions on his property and not for commissions on the property of his wife.

In some of its aspects this case is not unlike the case of *Mosell Realty Corp.* v. *Schofield*, 183 Va. 782, 33 S. E. (2d) 774.