[Civ. No. 10029. Third Dist. May 12, 1961.]

JOHN C. STEWART et al., as Trustees, etc., Appellants, v. INDIAN CREEK LUMBER COMPANY, INC. (a Corporation) et al., Respondents.

Manwell & Manwell and Erling S. Norby for Appellants.

Huber & Goodwin and Robert D. Prior for Respondents.

SCHOTTKY, J.—John C. Stewart, Gerry O. Stewart and Francis E. Hall, as trustees for Southern Humboldt Lumber Company, a corporation whose term of existence has expired, appeal from an order dismissing their third amended complaint after the demurrer of the defendants was sustained with leave to amend and no amendment was filed.

Before discussing the contentions of appellants we shall summarize the factual situation as alleged in the complaint.

The Southern Humboldt Lumber Company was originally incorporated in California in 1902 for a term of 50 years. The charter of the corporation expired by operation of law in 1952. The incorporators, who were the owners of all the capital stock, were Thomas Pollard, Calvin Stewart, John A. McPherson, H. N. Anderson and A. W. Middleton.

In 1939 the Board of Directors of Southern Humboldt consisted of A. W. Middleton, the president, Henry N. Anderson, S. M. Anderson, E. A. Middleton and George L. McPherson. The last three directors had been elected in place of Calvin Stewart and Thomas Pollard who had died. No notice of the election of these directors was ever received by the heirs or representatives of the two deceased directors.

In 1939 Southern Humboldt sold all of its assets, which allegedly were worth over one million dollars, to one A. S. Hoonan, A. W. Middleton's son-in-law, for the sum of $29,500. As a part of the transaction certain real property was transferred to Hoonan. On August 18, 1939, Hoonan, allegedly acting on behalf of the Anderson and Middleton families, formed a corporation named the Indian Creek Lumber Company, Inc. On October 10, 1939, Hoonan transferred a part of the property received from Southern Humboldt to Indian Creek, and at a later date the remainder. This transfer too was allegedly for the benefit of the Anderson and Middleton families. Later the Andersons became the sole owners of Indian Creek, which in 1948 changed its name to the Andersonia Lumber Company. In 1958 Andersonia was dissolved and all of its assets were transferred to Harold B. Anderson, Eva L. Anderson, his wife, Lucia Anderson Halsey and Edna F. Anderson, constituting a copartnership known as Andersonia Lumber Company.

No notice of any of these transactions was ever sent to the

heirs of Calvin and Francis E. Stewart or Thomas Johnson, or to the Wells Fargo Bank and Union Trust Company, as executor of the estate of Thomas Pollard, or to the heirs of Thomas Pollard, though the estates were, and the heirs are, shareholders of Southern Humboldt.

In 1940 a suit was filed by Wells Fargo Bank, as executor of the estate of Thomas Pollard, and Ida M. Anderson, as guardian of the estate of H. N. Anderson, Jr., against Southern Humboldt, Hoonan, Indian Creek Lumber Company, Inc., and various individuals, to have the purported sale of the assets of Southern Humboldt set aside and returned to Southern Humboldt. The bank informed all the shareholders of Southern Humboldt, including the heirs of Calvin Stewart, of the litigation. This suit was subsequently dismissed. The Stewart heirs were informed of the dismissal.

After the Stewart heirs learned of the dismissal of the action brought by the bank, they urged Lavinia Johnson, a daughter of Calvin Stewart and the administratrix of his estate, to commence an action to have the assets of Southern Humboldt returned. Finally, she entered into an agreement with an O. O. Barker wherein he agreed to pay the costs of a suit to recover the property. Barker retained the firm of Preston and Falk to institute such a suit, and in 1949 a suit was filed. This suit was dismissed for lack of prosecution.

In February 1954, Ella Jones, a daughter of Calvin Stewart, was informed by an attorney that a sound cause of action existed but that it would be better to contact local attorneys.

After the Stewart heirs learned of the dismissal of the suit instituted by Lavinia Johnson, they hired one Joseph Kejr to investigate the facts and to institute litigation to recover the assets. Kejr became ill and died in 1955 without performing his side of the agreement. Shortly after Kejr's death, John C. Stewart, on behalf of the Stewart heirs, contacted an Ed Funk to investigate the matter and to bring litigation to obtain restoration of the properties. Shortly thereafter (prior to January 1, 1956) Funk died. Then an attorney in Eureka, one Leonard Conroy, was contacted, and he orally agreed to handle the matter on a contingent fee basis. After about eight months Conroy and Stewart terminated their agreement. Then A. W. Way, an attorney, was contacted. After a preliminary investigation he refused the case.

In 1959 attorneys Manwell and Manwell and E. S. Norby undertook the matter and after trustees were appointed (see

Corp. Code, §§ 4804-4808) this suit was begun. The third amended complaint stated two causes of action. The first alleged a conspiracy and that the action of transferring the assets was illegal. The second cause of action alleged that the Southern Humboldt Lumber Company was the owner of certain real property in Humboldt County (apparently not all of the property was transferred) and that the defendants claimed an interest in the property which was without right.

The defendants demurred to both causes of action on the grounds that they were barred by laches, various statutes of limitations, and the lack of capacity of the plaintiffs to sue. In its order sustaining defendants' demurrer the court stated: "If there ever was a case that was barred by the Statutes of Limitations and laches, this is it."

We think that the demurrer to the first cause of action was properly sustained on the ground of laches and also on the ground of the statute of limitations. Two suits were previously filed to recover the property. Each was dismissed, the second for lack of prosecution. The Stewart heirs had knowledge of the facts for almost 20 years before this suit was filed. Lavinia Johnson, also a Stewart heir, brought an action to recover the property for the estate of Calvin Stewart. This was, in effect, an action on behalf of the present appellants.

As stated in *Kleinclaus* v. *Dutard,* 147 Cal. 245, at page 249 [81 P. 516]: "Following the maxim that equity aids the vigilant and not those who slumber on their rights, it has been universally declared that only conscience, good faith, and reasonable diligence can call a court of equity into activity, and that, entirely independent of any statutory period of limitations, stale demands will not be aided where the claimant has slept upon his rights for so long a time and under such circumstances as to make it inequitable to enter upon an inquiry as to the validity thereof. Where such is the condition, the demand is, in a court of equity, barred by laches. As has often been said, there is no artificial rule as to the lapse of time or circumstances which will justify the application of the doctrine. Each case as it arises must necessarily be determined by its own circumstances, . . ."

And in *Stevenson* v. *Boyd,* 153 Cal. 630, at page 638 [96 P. 284, 19 L.R.A. N.S. 525], the court said: "But whether or not, under all the circumstances, the delay has been such as to render it inequitable to grant the relief is, in the first instance, a question for the trial court, the determination of

which is left, as is said in *Chapman* v. *Bank of California,* 97 Cal. 155, 159 [31 P. 896], 'to the sound discretion of the chancellor in each case.' ''

[█  Appellants contend that the facts alleged in the first cause of action give rise to a constructive trust and that the matter is one of laches rather than the statute of limitations. But even if the first cause of action is to be regarded as one to enforce a constructive trust in accordance with section 2224 of the Civil Code, it is still barred by the statute of limitations. (Code Civ. Proc., § 343 (4 yrs.) ; *Burns* v. *Ross,* 190 Cal. 269 [212 P. 17].)

However, a different situation exists as to the second cause of action. It appears from the allegations of the second cause of action that the real property described in Exhibit ''B'' was never conveyed out of Southern Humboldt Lumber Company, and respondents concede that neither the statute of limitations nor laches would be applicable to the attempt to quiet title to the property described in Exhibit ''B'' under the facts pleaded.

Respondents argue that even if the court erroneously sustained the demurrer to the second cause of action solely on the grounds of the statute of limitations and laches a reversal of the order dismissing the action is not required because respondents also demurred on the ground that plaintiffs did not have the legal capacity to sue.

However, in the instant case the order of the court sustaining the demurrer stated that the action was barred by the statute of limitations and laches and did not rule on the ground of lack of capacity to sue. █  As stated in *Stowe* v. *Fritzie Hotels, Inc.,* 44 Cal.2d 416, at page 425 [282 P.2d 890] :

''The pleader should be entitled to rely upon a statement in the order sustaining the demurrer as to the ground upon which it is made. █  When a demurrer based upon both general and special grounds is sustained and the order mentions only the general ground, impliedly the ruling was made either without consideration of the special grounds or upon a determination that they are not well taken. If the general demurrer was sustained erroneously, the trial judge should be directed to consider the special grounds. (See *Guilliams* v. *Hollywood Hospital,* 18 Cal.2d 97, 104 [114 P.2d 1].) Under a contrary rule, the pleader could not profit from the appeal unless he has anticipated the ruling to be made on

the special demurrer and amended his pleading to remedy any defects.''

We conclude that the court erred in sustaining the demurrer to the second cause of action and in dismissing the action.

The order appealed from is reversed insofar as it dismissed the second cause of action and affirmed insofar as it dismissed the first cause of action.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.